## DAVID L. BROOKS v. WILLIAM MORROW.

**Guardian's Bond—Counter Security—Right of County Court to Release.**
When it is required of a guardian, and he gives his surety counter-security it may be proper and the county court might be authorized to release the surety requiring the counter security of the guardian. But until such requirement is complied ·with the court has no authority to release any surety .

**Same.**
The counter-security contemplated and required is the execution of a bond or covenant by the guardian with one or more good sureties, approved by the court, who must undertake faithfully to discharge the trust of guardian and to. secure the surety making the application from loss and all the liabilities he may have incurred by reason of having been bound as the surety of the guardian. Less than that, the court has no legal power to do, and until that is done, the former surety remains bound.

**Bond—Construction of its Sufficiency—Release of Surety—Right of Wards to Sue Guardian or One or More of the Sureties.**
A bond that does not show the name of the guardian, ward or surety, though signed by guardian and his surety, is held not to be a sufficient bond as is required by Statute, or sufficient as an indemnity to a former surety who makes demand for new security, and will therefore not release the former surety. The wards have the right to sue the guardian alone, or with one or more of his sureties, and a judgment against one of such sureties, he cannot reverse because the other sureties were not made parties to the suit.

May 22, 1868.

APPEAL FROM BULLITT CIRCUIT COURT.

OPINION OF THE COURT BY JUDGE PETERS:

In August, 1854, William Shain was appointed by the Bullitt County Court guardian for William and Nathan Morrow, and executed a covenant to the Commonwealth with Woodford McDowell as his surety.

In 1858, McDowell, the surety, apprehending Shain was insolvent, proceeded against him for counter security in said court, and, on the 15th of February the following order was made, on

McDowell's said motion: "This day came the parties by their attorneys, and the defendant elected to give a new bond, and thereupon came into court and executed a new bond to the Commonwealth with David L. Brooks, James Anderson and Alonzo C. Kennison his sureties, conditioned according to law," and a complete bond was executed.

On the 16th of January, 1860, as the record shows, Kennison required Shain to execute a new bond, and as is stated in the order Shain, "Gave a bond with Henry P. North as his surety, who is accepted in the place of A. C. Kennison, security, and said Kennison is released as security on said bond from this date. Said Shain and North, security, executed a bond to the Commonwealth of Kentucky, conditioned according to law. D. L. Brooks and James H. Anderson the other securities and A. B. North are now the securities."

A bond, or paper in blank as to the name of the guardian, ward and surety, but signed by Shain and North is presented as the bond taken under that order. And in December, 1860, on motion of North against Shain for couunter-security, Shain was required to execute a bond to North, and a paper precisely such as he signed, is signed by Shain and W. B. M. Brooks.

On the 19th of April, 1867, the Morrows brought their action against Wesley Phelps, curator of the estate of Shain, he having died, and all the persons who signed bonds as his sureties for a settlement of his accounts, and for the amounts due them from their late guardian. The court below dismissed the petition as to McDowell, Kennison, North and W. B. M. Brooks, and rendered judgment against D. L. Brooks and James H. Anderson for the residue of the debt due the plaintiffs after deducting the amount paid by Phelps as curator of the estate of Shain, and D. L. Brooks appeals.

He insists that by the order of the county court purporting to release Kennison, that he and Anderson were also released, and it was therefore erroneous to render judgment against him and Anderson's representative.

It is made by statute the duty of the county court, when a guardian is appointed for a minor, to take from such guardian a covenant with good surety approved by the court to the Commonwealth faithfully to discharge the trust of guardian. Sec. 3, Art. 1, Chap. 43, 1 Vol. R. S., 574.

After the appointment is made the court may remove the guardian for failing to make settlement of his accounts as required by law, or as may be required by the court, or for failure to give additional security when required. Sec. 13 *ib.* And by the next section it is made the duty of the court annually to inquire into the solvency of the sureties for guardians; and if at any time it has cause to believe that the sureties of a guardian are insolvent, or in failing circumstances, it shall, after summoning the guardian, require him to give additional security. The 15th section provides upon the application of the surety of any guardian and after summoning the guardian, the court may if it believes him to be insolvent, or in doubtful circumstances, require him to give counter-security to his surety, and on his failing to do so, remove him, or order the estate of the ward to be paid over to a new guardian or curator. But if the guardian shall when required give his surety counter-security, it may be proper and the county court might be authorized to release the surety requiring counter-security. But until that is done it is very clear the county court has no power to release any surety.

The counter-security contemplated and required is the execution of a bond or covenant by the guardian with one or more good sureties, approved by the court, who must undertake faithfully to discharge the trust of guardian, and to secure the surety making the application from loss and all the liabilities he may have incurred by reason of having been bound as the surety of the guardian. Less than that, the court has no legal power to do, and until that is done, the former security remains bound.

The paper signed by Shain and North was not such a covenant as is required by law, and wholly insufficient as a guardian's bond, or as an indemnity to Kennison; it is in fact, no bond or covenant; consequently the county court of Bullitt had no power to make the order releasing Kennison, and *a fortiori* appellant was not released. But the failure to render judgment against Kennison is not an error of which appellant can avail himself for a reversal; the wards might have been entitled to a judgment against him as a joint-obligor with their guardian; and they might sue the guardian alone, or with one and more of his sureties, and a judgment against such surety he could not reverse because the other sureties were not sued.

Judgment affirmed.

*Bullock & Anderson,* for appellant.

*H. H. Field,* for appellee.